**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 30, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DIMAS ALEXANDER MUNGUIA-
HERRERA, aka Dimas Alexander
Mungula-Herrera, aka Dimas A. Mungula-
Herrera,

    Defendant - Appellant.

No. 24-1356
(D.C. No. 1:23-CR-00105-PAB-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

A jury found Appellant Dimas Alexander Munguia-Herrera guilty on two

counts: (1) Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and

(2) knowingly using and discharging a firearm during and in relation to a crime of

violence (the robbery) in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

Munguia-Herrera appeals, contending the government did not produce sufficient

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

evidence to uphold the convictions.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     Background

On January 12, 2023, a newer white Ford Bronco entered a Conoco gas station parking lot in Westminster, Colorado.  The Conoco outside surveillance video showed a man wearing a blue jacket over a gray hooded sweatshirt, blue latex gloves, and a dark medical face mask sat in the passenger seat.  The man tried to tighten the hood of the sweatshirt, but the hood lacked a drawstring.  The Bronco continued past the store and then backed into a parking space.  The same man exited the Bronco and entered the store.

Inside, the surveillance video showed the man was wearing dark pants and sneakers with a distinctive white sole, dark colored upper, white stripes, and floppy shoelaces.  Once inside, the man went to the drink section and then approached the counter with two large bottles of water.  He asked the store clerk about the lighters by the register and whether the store had cell phone charging cords that would fit his phone.  The man also picked up a pair of sunglasses and a bag of pistachios.  He then told the store clerk it was a robbery, pulled a gun, and asked for money.  The store clerk pulled what money was in the cash register and put it in a plastic bag along with the other items on the counter.  Appearing dissatisfied, the robber fired the gun.  He then took the bag with the stolen items and left.  The store clerk called the police who arrived soon after.  Upon questioning, the store clerk described the robber as a white

2

or Hispanic male, about five-foot-six, slim build, with freckles and dark medium hair who spoke English and Spanish.

Two days later, while on patrol, Denver police officers spotted a newer white Ford Bronco in the parking lot of the Star Motel in northeast Denver—a motel known as a frequent site for criminal activity. Observing that compared to the other vehicles in the parking lot the Bronco was a newer vehicle, the officers ran the license plate. The report showed the Bronco had been stolen a few days earlier in Westminster, Colorado, and involved in a robbery at a Conoco gas station near there.

The officers then reviewed the motel's surveillance video, which showed the Bronco arrive and the driver, who was wearing a gray hooded sweatshirt with a dark lining and carrying a jacket, enter a second-floor room. The driver wore distinctive shoes with a white sole, dark colored upper, white stripes, and floppy shoelaces—consistent to those seen in the Conoco surveillance video. The officers planned to knock on the driver's room door, but as they approached, they saw him walking down the stairs carrying some items. When the driver saw the officers, he ran, dumped what he was carrying, and jumped the fence. The police chased him but were unable to apprehend the driver that evening. The next day, a motel employee found the hooded sweatshirt and a semiautomatic pistol frame. The hooded sweatshirt looked like the one seen in the surveillance videos: light gray with a dark lining on the hood and no drawstring.

After the chase, the police continued the investigation by towing and impounding the Bronco, sealing it, and placing it in a secure holding facility. At the

3

secure site, the police processed the Bronco, finding, among other things, a cellphone charging cord consistent with the one taken from the Conoco and two food receipts for "Alex." They also collected fingerprints from the receipts and the Bronco's touchscreen. The fingerprints matched Munguia-Herrera's. He was arrested on an indictment in April 2023.

After a trial, a jury convicted Munguia-Herrera of Hobbs Act robbery and knowingly using and discharging a firearm during and in relation to a crime of violence. Munguia-Herrera timely appealed.

## II.    Discussion

Munguia-Herrera claims the government did not present sufficient evidence to support his convictions. "We review de novo whether there was sufficient evidence to support a defendant's convictions." *United States v. Robinson*, 993 F.3d 839, 844 (10th Cir. 2021). "We consider all evidence, circumstantial and direct, but we do not weigh the evidence or consider credibility of the witnesses." *Id.* (internal quotation marks omitted). We review the evidence, "and any reasonable inferences drawn therefrom, in the light most favorable to the government." *United States v. Isabella*, 918 F.3d 816, 830 (10th Cir. 2019). "[A]n inference is only reasonable where there exists a probability that the conclusion flows from the proven facts," *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000) (internal quotation marks omitted), whereas it is "unreasonable where the jury engaged in a degree of speculation and conjecture that renders its findings a guess or mere possibility," *id.* (internal quotation marks omitted). "Rather than examining the evidence in bits

4

and pieces, we evaluate the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *United States v. Tennison*, 13 F.4th 1049, 1059 (10th Cir. 2021) (internal quotation marks omitted). Thus, reversing a jury conviction for insufficient evidence is only appropriate "when no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Isabella*, 918 F.3d at 830.

Munguia-Herrera challenges only the sufficiency of the government's evidence identifying him as the robber. He claims there is "nothing distinctive about being Hispanic, having dark skin and hair, and speaking English and Spanish." Aplt. Opening Br. at 8. Relying on *United States v. Robinson*, Munguia-Herrera also argues that a conviction cannot stand that "was obtained by nothing more than piling inference upon inference." *Id.* at 6 (quoting *Robinson*, 993 F.3d at 844). Specifically, he asserts that the gray hooded sweatshirt was insufficient evidence to identify him as the robber because the jury must pile inference upon inference to conclude it was his. He then contends the shoe evidence was insufficient because the poor quality of the surveillance videos could not confirm the similarities between the shoes worn in the robbery and those seen at the Star Motel and in his Facebook profile picture. Munguia-Herrera then argues the receipt evidence was not sufficient to prove he committed the robbery because, even though the name on the receipts was "Alex Herrera" and his fingerprints were a match, that evidence established only that he was in the Bronco. Here too, he asserts that to conclude he committed the robbery based on the receipt evidence would require the jury to pile inference upon

5

inference.  Likewise, Munguia-Herrera argues the phone charger and cell phone cover found in the Bronco do not connect him to the robbery without piling inference upon inference.

After examining the record on appeal, we conclude the government's evidence at trial, taken as a whole, provided a sufficient basis for the jury to conclude Munguia-Herrera was the robber.  The Bronco was the vehicle used in the robbery.  Both Munguia-Herrera and the robber in the surveillance videos appear as five-foot-six white or Hispanic males.  The robber wore a grey hooded sweatshirt with a dark lining and missing drawstrings; the police found a grey hooded sweatshirt with dark lining and missing drawstrings near the dumpster in the parking lot of the Star Motel after Munguia-Herrera fled.  Both Munguia-Herrera and the robber wore distinctive white sneakers with dark uppers, white stripes, and loose laces.  Munguia-Herrera's fingerprints matched those found on the touchscreen and receipts in the Bronco.  And the charger found in the Bronco matched the description of the stolen charger.

We are unpersuaded by Munguia-Herrera's argument that the government's evidence required the jury to pile inference upon inference to convict him.  In analyzing sufficiency of the evidence claims "[w]e consider both direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom."  *Tennison*, 13 F.4th at 1059 (internal quotation marks omitted).  And despite his insistence on parceling out each piece of evidence, our review consists of "considering the collective inferences to be drawn from the evidence as a whole."  *Id.* (internal quotation marks omitted).  We have done so here and conclude that the

jury's conclusion that Munguia-Herrera was the robber is supported by the collective inferences drawn from the direct and circumstantial evidence.

## III.    Conclusion

Based on our review of the evidence as a whole, we conclude a rational jury could find beyond a reasonable doubt that Munguia-Herrera was the person who robbed the Conoco (Hobbs Act robbery) and knowingly discharged a firearm during the robbery.  The district court's judgment is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge